# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

_____
                               )
IN RE BELLSOUTH CORPORATION    )   CIVIL ACTION
SECURITIES LITIGATION          )   No. 1:02-CV-2142-WBH
_____)

## PLAINTIFFS' MOTION FOR RECONSIDERATION

| | |
|---|---|
| **CHITWOOD & HARLEY, LLP** | **BERNSTEIN LIEBHARD &** |
| Martin D. Chitwood | **LIFSHITZ, LLP** |
| Georgia Bar No. 124950 | Keith M. Fleischman |
| Krissi T. Gore | Francis P. Karam |
| Georgia Bar No. 687020 | Andrea H. Williams |
| 1230 Peachtree Street, NE | 10 East 40th Street |
| 2300 Promenade II | 22nd Floor |
| Atlanta, GA 30309 | New York, NY 10016 |
| Tel: (404) 873-3900 | Tel: (212) 779-1414 |
| Fax: (404) 876-4476 | Fax: (212) 779-0154 |

Co-Lead Counsel for Plaintiffs

# **INTRODUCTION**

Should the Court reopen its decision for reconsideration, Plaintiffs respectfully request that this Court reconsider those aspects of its February 8, 2005, Order ("Order") dismissing Plaintiffs' claims under Sections 10(b) and 20(a) of the Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, concerning BellSouth's improper billing of its Competitive Local Exchange Carriers ("CLEC") and Defendants' associated material misstatements and omissions. Plaintiffs bring this motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 7.1E of the Northern District of Georgia on the grounds that the Court apparently failed to consider several key allegations evidencing Defendants' scienter with respect to the CLEC billing allegations and associated GAAP violations.

In particular, Plaintiffs request consideration of the following allegations:

1. The CLEC billing practices were directly overseen by BellSouth Senior Vice President Greg Follensbee ("Follensbee") (Compl. ¶¶6, 54);

2. Follensbee essentially admitted under oath that BellSouth had a policy to breach contractual obligations through its overbilling practices and corrected those overbillings only if BellSouth was expressly requested to by the CLEC (*Id.*); and

3. The auditor of another Florida CLEC, Choice Telecom, uncovered significant overbilling by BellSouth and concluded that BellSouth: (i) was aware that CLEC overbilling was wide-spread, (ii) takes advantage of smaller CLECs who lack resources to verify their bills, and (iii) actively avoids resolution of CLEC overbilling by frequently shifting CLEC account managers (Compl., ¶¶57-60).

These allegations plead direct knowledge by Defendants of their improper practices

and certainly raised "red flags" of misconduct. When these detailed allegations are considered in conjunction with all the other scienter allegations, including Defendants' insider stock sales, Plaintiffs submit that the Complaint's securities fraud allegations surrounding the CLEC customers should be reinstated.

Upon reconsideration, this Court should reinstate Plaintiffs' Section 10(b) and 20(a), and Rule 10b-5 claims as to the CLEC allegations.

## BACKGROUND

One of the numerous improper activities Plaintiffs allege Defendants engaged in, and which underlies Plaintiffs' claims for securities fraud, was BellSouth's intentional, systematic and pervasive overbilling of customers, including its CLEC customers. *See e.g.,* Compl. ¶5. The Complaint alleges that BellSouth knowingly overbilled its customers, and Defendants issued materially false and/or misleading statements and omissions during the Class Period regarding this improper overbilling so that BellSouth could improperly recognize hundreds of millions of dollars in revenue, artificially inflating the price of the Company's securities during the Class Period. *See e.g.,* Compl. ¶¶ 44, 55, 72. The Complaint further alleges that on July 22, 2002, BellSouth announced that it would take a bad debt expense of $255 million for the second quarter ending June 30, 2002, and that this expense was directly attributable to the improper billing practices. *See e.g.,* Compl. ¶111.[1]

This Court found that the CLEC overbilling allegations were sufficient "to

---

[1] The Complaint's allegations that BellSouth improperly overbilled customers are found at paragraphs 5-8 and 39-83.

support a claim of securities law violations angainst Defendants":

> Plaintiffs have identified several companies which had specific grievances with BellSouth and specific accounting irregularities during the Class Period, attempted to quantify the financial impact thereof, and connected these improprieties to an arguably material misstatement in the company's financial statements. Thus, this claim states a material misrepresentation sufficient to survive a motion to dismiss.

February 8 Order at 50. Although the Court also found that the Complaint met the "material misrepresentation" prong for pleading securities fraud, the Court dismissed Plaintiffs' claims arising from the CLEC overbilling allegations on grounds that the Complaint did not adequately allege that Defendants acted with the requisite scienter. February 8 Order at 66-67. Specifically, the Court held that:

> Because Plaintiffs have failed to plead facts that show that any of the alleged errors or improprieties should have been obvious to BellSouth, were challenged by any auditors, or that BellSouth disregarded red flags that would have revealed the errors or improprieties to those responsible for preparing financial statements prior to the company's issuance of public filings, the Court finds that Plaintiffs have failed to allege facts that give rise to a strong inference of scienter.

*Id.*

Plaintiffs respectfully request the Court to reconsider its holding that the Complaint failed to adequately plead scienter with respect to the fraudulent CLEC billing allegations and associated GAAP violations.

## **ARGUMENT**

### I. **Reconsideration Standard.**

District Courts have substantial discretion in ruling on motions for reconsideration. *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir. 1992) ("The decision to alter or amend a judgment is committed to the sound discretion of the district court."). A motion for reconsideration may be granted where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact or prevent manifest injustice. *Bryan v. Murphy,* 246 F. Supp. 2d 1256, 1258-59 (N.D.Ga. 2003) (citing *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,* 916 F. Supp. 1557 (N.D. Ga. 1995) (O'Kelley, J.) and *Jersawitz v. People TC,* 71 F. Supp. 2d 1330 (N.D.Ga. 1999) (Moye, J.).

Generally, if a court would have reached a different conclusion based on the substance of the moving party's request, courts in this district will reconsider the matter presented. *Frascona v. Minnesota Mut. Life Ins. Co.,* 53 F.Supp.2d 1282, 1283-84 (N.D.Ga. 1998) (motion for reconsideration granted due to court's misapplication of Georgia law); *Simpkins v. Runyon,* 5 F.Supp.2d 1347, 1351 (N.D.Ga.1998) (plaintiff's motion for reconsideration granted and case law reconsidered after court issued a one line denial of summary judgment) (Moye, J); *Britt Paulk Insurance Agency, Inc. v. Vandroff Insurance Agency*, 952 F.Supp. 1575

(N.D.Ga. 1996) (Vining, J) (motion for reconsideration granted due to the court's failure to consider evidence); *Preserve Endangered Areas of Cobb's History, Inc. (P.E.A.C.H.) v.* 915 F.Supp. 378, 383-84 (N.D.Ga. 1995) (O'Kelley) (motion for reconsideration granted upon review of case law).

Plaintiffs respectfully submit that the Court has a basis to reconsider those aspects of its Order dismissing Plaintiffs' Section 10(b) and 20(a), and Rule 10b-5 claims concerning the CLEC billing issue and associated GAAP violations.

**II.    The Admission Under Oath By A BellSouth Senior VP That BellSouth Wrongfully Overbilled CLECs and the Independent Audit Conducted by a CLEC Customer Revealing BellSouth's Wrongful Overbilling, When Considered Together With the Complaint's Other Allegations, Support a Strong Inference of Scienter.**

In evaluating Plaintiffs' scienter allegations surrounding the CLEC overbilling charges, it appears that the Court limited its analysis to those allegations contained in paragraphs 45, 51 and 66 of the Complaint.[2]  Additionally, the Court examined but rejected the contention in Plaintiffs' brief in response to Defendants' motion to

---

[2] Those allegations detail the findings of an arbitration tribunal that ruled against BellSouth in connection with a dispute over BellSouth's massive and improper rate overcharges to one of its CLEC customers, Supra Telecommunications & Information Services, Inc. ("Supra"). Compl. at ¶¶39-52.  In fact, the arbitration tribunal found that BellSouth breached its agreement with Supra "in material ways and did so with . . . tortious intent. . . ." Compl. at ¶ 45.  The Supra arbitrations revealed that during the period from June 2001 through June 2002, BellSouth overbilled Supra by at least $53 million and possibly up to $97.5 million, an amount that itself is so massive as contribute to a finding of a strong inference of scienter.

dismiss that "[t]he complexity of BellSouth's bills, which makes them difficult to challenge, also strongly implies an intentional practice." Thus, the Court held that, even when considered together, these allegations fail to give rise to a strong inference of scienter. *See* February 8 Order at 66. However, the Complaint's allegations supporting a finding of scienter as to Defendants' material mistatements and omissions regarding BellSouth's improper CLEC billing practices go far beyond the Supra arbitration allegations and the complex billing practices allegations acknowledged by the Court.

First, BellSouth admitted that it charged many (if not all) of its hundreds of CLEC customers – not just Supra – the more expensive "tandem switch" rates, even when less expensive "switch-to-switch" rates should have applied pursuant to the Company's contractual obligations with the CLECs. BellSouth's Senior Vice President Follensbee (who was directly resopnsible for overseeing CLEC billing) testified under oath in Supra's bankruptcy proceeding that BellSouth corrected the improper overcharges *only when explicitly requested by the CLEC customer.* Compl. ¶¶6, 54. Otherwise BellSouth concealed the overcharges and improperly recognized revenue based on these known, but concealed, overcharges. Compl., ¶ 8.

When specifically asked about this improper billing practice, Follensbee (identified in the transcript cited below as the "Witness") testified under oath as

follows:

BY MR. CHAIKEN: Let me ask you this, do you bill all [competing local carriers] the same way?

THE COURT: On this issue, you mean?

MR. CHAIKEN: Yeah.

THE WITNESS: I would have to be able to – we bill all [competing local carriers] the same way when they use UNE switching from us.

BY MR. CHAIKEN: So would it be true that – well, has any other [competing local carrier] come and said, you know what, you're billing us a hundred percent on these – for this melded tandem switching rate, give us a discount?

A. Yes, they have and we've given them a discount.

Q. Do you provide a discount if they don't dispute it?

A. We haven't in the past. We are in the process of loading it because it should have already been loaded for all states, so in the future they won't need to ask unless they don't agree with what percent we're loading. It's something that should have been in the bill system all along and just wasn't put in. We have the capability to bill it, we just never put the right – factor in, so the factor became one. [Emphasis added.]

Because Follensbee is a senior level executive for BellSouth, by any standard, this testimony is evidence that BellSouth knew at the very least of the improper CLEC billing practices with respect to Supra. But Follensbee's confession was not limited to

-8-

Supra—he was testifying to a company-wide policy and practice that applied to all of the 903 signed CLEC contracts that were in force at the time of his testimony and most of which were in force during the Class Period. Compl., ¶¶ 8, 53-54. Indeed, Follensbee confessed that BellSouth had the capability to correct this problem but failed to do so, and knowingly failed to grant a discount unless asked. This is circumstantial evidence that BellSouth knowingly overbilled over 900 CLECs and failed to correct these overbillings unless expressly requested to do so by the CLEC (i.e., grant the contractually bound discount rate).

Second, another series of specific allegations demonstrating that Defendants acted with the requisite scienter centers around another CLEC customer, Choice Telecom. The Complaint alleges that Choice Telecom was routinely overbilled by BellSouth for repair services. Compl., ¶57. Based on its audit, Choice Telecom's outside auditor concluded that BellSouth: (i) was aware that CLEC overbilling was wide-spread, (ii) took advantage of smaller CLECs that lacked resources to verify their bills, and (iii) actively avoided resolution of overbilling issues identified by CLECs by frequently shifting CLEC account managers. Compl., ¶¶ 57-59. These conclusions, reached by an outside auditor corroborate the admissions by Follensbee and strongly support a finding of scienter.

Third, the Complaint's other scienter allegations that the Court has already

found meritorious, further support a strong inference of scienter as to the CLEC allegations. *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017-18 (11th Cir. 2004) ("[n]othing in this language [of the PSLRA] suggests that scienter may only be inferred from individual facts, each of which alone gives rise to a strong inference of scienter, rather than from an aggregation of particularized facts. We readily join the courts that have interpreted the PSLRA to permit the aggregation of facts to infer scienter."). *See also In re Towne Services, Inc. Sec. Litig.,* 184 F. Supp. 2d 1308, 1325 (N.D. Ga. 2001); *In re Premiere Tech., Inc. Sec. Litig.*, No. 1:98-CV-1804-JOF, 2000 WL 33231639, at *9 (N.D. Ga. Dec. 8, 2000).

For example, the Court properly recognized that Defendants' suspicious stock sales, when considered with the Complaint's other allegations, were sufficient to support a strong inference of scienter with respect to the allegations concerning BellSouth's impairment of its Latin American goodwill. *See* February 8 Order at 70-72. Such is the case with respect to the CLEC and related GAAP allegations, as Defendants' insider trading occurred within the same time frame at issue. Thus, the Court should give equal consideration to Defendants' insider sales when evaluating scienter with respect to Plaintiffs' CLEC allegations.

Finally, the Court apparently also failed to consider possible anti-competitive motives underlying BellSouth's unlawful billing practices with respect to CLECs. *See*

Compl., ¶¶5, 39. That BellSouth's anticompetitive behavior with respect to CLECs is a serious concern to the federal government and that local CLECs have been involved in antitrust litigation with BellSouth and other carriers is no secret. *See e.g., Covad Communications Co. v. BellSouth Corp.,* 374 F.3d 1044 (11th Cir. 2004). Thus, the Complaint's allegations on this issue also should be considered to support scienter.

In sum, when all these detailed allegations are considered together, Plaintiffs submit that they raise a stong inference that Defendants acted with the requisite state of mind in connection with the CLEC billing allegations ad related GAAP violations.

## CONCLUSION

Plaintiffs respectfully submit that this Court should reconsider its decision to dismiss Plaintiffs' Exchange Act claims concerning CLEC overbilling in light of the key factual allegations that the Court apparently failed to consider. Upon reconsideration, Plaintiffs' Section 10(b) and 20(a), and Rule 10b-5 claims that are based on the Complaint's CLEC billing allegations and associated GAAP violations should be reinstated.

Dated: February 23, 2005.

**CHITWOOD & HARLEY, LLP**

**/s/ Martin D. Chitwood**
Martin D. Chitwood (GA Bar No. 124950)
James M. Evangelista (GA Bar No. 707807)
1230 Peachtree Street, NE
2300 Promenade II
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/ Keith M. Fleischman (w/express permission)
Keith M. Fleischman
Francis P. Karam
Andrea H. Williams
10 East 40th Street
22nd Floor
New York, NY 10016

Tel: (212) 779-1414
Fax: (212) 779-0154

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within and foregoing "**PLAINTIFFS' MOTION FOR RECONSIDERATION**" upon counsel for Defendants by facsimile and first class U.S. mail, postage prepaid, at the following address:

ALSTON & BIRD LLP
Peter Q. Bassett
John Latham
Teresa Bonder
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7777

This 23rd day of February, 2005.

**/s/ Martin D. Chitwood**
Martin D. Chitwood
Georgia Bar No. 124950
CHITWOOD & HARLEY, LLP
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 873-3900